# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KIM R. WEVER and TED MELTON**, on behalf of themselves individually and on behalf all others similarly situated, | Case No. _____ |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| **BHI ENERGY SERVICES, LLC and BHI ENERGY I SPECIALTY SERVICES LLC**, | |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, Kim R. Wever and  Ted Melton ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Action Complaint (the "Action") against BHI Energy Services, LLC and BHI Energy I Specialty Services, LLC (collectively, "Defendants" or "BHI"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendants. Plaintiffs make the following allegations upon information and belief, except as to their own actions, the investigation of counsel, and the facts that are a matter of public record.

## I.    <u>INTRODUCTION</u>

1.    This Action arises from BHI's failure to protect and secure the highly sensitive personally identifiable information ("PII") and protected health information ("PHI"), of Plaintiffs and the Class. As a result, criminal ransomware group, Akira, easily infiltrated BHI's computer systems and ***stole*** the PII and PHI of approximately 91,269 individuals (the "Class" or "Class Members") in a massive and preventable data breach (the "Data Breach" or "Breach").[1]

2.    BHI is a business services company that provides staffing solutions and related services to the oil, gas, and energy industries.[2] BHI acquired, collected, and stored Plaintiffs' and Class Members' PHI/PII to provide services.

3.    On or around June 29, 2023, BHI discovered that an unauthorized third-party gained access to Plaintiffs' and Class Members' PHI/PII through BHI's inadequately protected computer network.[3]

---

[1] *See* https://www.bleepingcomputer.com/news/security/us-energy-firm-shares-how-akira-ransomware-hacked-its-systems/; *see also* https://apps.web.maine.gov/online/aeviewer/ME/40/0c96d450-be94-40b9-92ad-6c8e1cf64ef8.shtml

[2] *See* https://s3.documentcloud.org/documents/24075435/bhi-notice.pdf.

[3]    *See*    https://apps.web.maine.gov/online/aeviewer/ME/40/0c96d450-be94-40b9-92ad-6c8e1cf64ef8.shtml

CLASS ACTION COMPLAINT

4.      After an investigation, BHI confirmed that "certain BHI Business records stored in BHI's network, including some records that contained personally identifiable information ("PII"), were subject to unauthorized access."[4]

5.      BHI admitted that the types of PHI and PII improperly accessed during the Data Breach included: "first, middle, and last names, addresses, dates of birth, Social Security numbers, and potentially health information" (the "Private Information").[5]

6.      Although the Breach was discovered in June 2023, BHI did not begin to notify victims of the Data Breach that their PII and PHI was accessed by cybercriminals until in or around October 2023—approximately four months later.

7.      In the notice of data security incident letters ("Notice Letters") sent to Plaintiffs and the Class, BHI offered no information concerning when the Data Breach began, when it ended, how long the cybercriminals had access to its systems, nor how long it took BHI to secure its networks once the Breach was discovered. Defendant purposely left out these vital details to obfuscate the severity of the Breach.

8.      By taking possession and control of Plaintiffs' and Class members' Private Information, Defendants assumed a duty to securely store and protect the Private Information of Plaintiffs and the Class.

9.      Defendants breached this duty and betrayed the trust of Plaintiffs and Class members by failing to properly safeguard and protect their Private Information, enabling

---

[4] *Id.*

[5] *See*  https://apps.web.maine.gov/online/aeviewer/ME/40/0c96d450-be94-40b9-92ad-6c8e1cf64ef8.shtml

CLASS ACTION COMPLAINT

cyber criminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

10.    Defendants' misconduct—failing to timely implement adequate and reasonable measures to protect Plaintiffs' and Class members' Private Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Private Information, and failing to provide timely and adequate notice of the Data Breach—caused substantial harm and injuries to Plaintiffs and Class members across the United States.

11.    Due to Defendants' negligence and failures, cyber criminals **accessed and exfiltrated** everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of **over 90,000 individuals**, for decades to come.

12.    Plaintiffs bring this class action lawsuit to hold Defendants responsible for its grossly negligent—indeed, reckless—failure to use statutorily required and/or reasonable industry cybersecurity measures to protect Class members' Private Information.

13.    Because Defendants presented such an easy target to cyber criminals, Plaintiffs and Class members have already been subjected to violations of their privacy, fraud, and identity theft, and/or have been exposed to a heightened and imminent risk of certainly impending fraud and identity theft.

14.    Thus, as a result of the Data Breach, Plaintiffs and Class members have already suffered damages.

15.    For example, now that their Private Information has been **stolen** by cybercriminals who will inevitably release it into the criminal cyber domains (including the dark web), Plaintiffs and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiffs and Class members are now forced to deal with the danger of identity thieves possessing and using their Private Information.

16.    Additionally, Plaintiffs and Class members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

17.    Plaintiffs bring this action individually and on behalf of the Class and seek actual damages and restitution.  Plaintiffs also seek declaratory and injunctive relief, including significant improvements to Defendants' data security systems and protocols, future annual audits, Defendants-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## II.    THE PARTIES

18.    Plaintiff **Kim R. Wever** is a resident and citizen of Anchorage, Alaska. Plaintiff Wever received a Notice of Data Security Incident Letter ("Notice Letter") from Defendants notifying her that her Private Information was compromised in the Data Breach.

19.    Plaintiff **Ted Melton** is a resident and citizen of Lamar, Arkansas. Plaintiff Melton received a Notice of Data Security Incident Letter ("Notice Letter") from

CLASS ACTION COMPLAINT

Defendants notifying him that his Private Information was compromised in the Data Breach.

20.     **Class Members** (victims of the Data Breach) are domiciled across the United States. [6]

21.     Defendant **BHI Services LLC**, is a Delaware limited liability company with its principal place of business at 97 Libbey Industrial Parkway, second floor, Weymouth, MA 02189. Members of BHI Services, LLC are also domiciled in this District.

22.     Defendant **BHI Energy Specialty Services LLC,** is a Delaware limited liability company with its principal place of business at 2005 Newpoint Parkway, Suite 200, Lawrenceville, GA 30043.

23.     As part of Defendants' business, Defendants collect substantial amounts of Private Information.

### III.     <u>JURISDICTION AND VENUE</u>

24.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least some members of the Class, including Plaintiffs, are citizens of states that differ from Defendants.

---

[6] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/0c96d450-be94-40b9-92ad-6c8e1cf64ef8.shtml; *see also* https://oag.ca.gov/ecrime/databreach/reports/sb24-575323.

25.    This Court has personal jurisdiction over Defendants because Defendants conducts a substantial amount of business in this District and one of the defendants has its principal place of business located in this district.

26.    Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because one of the defendant's principal place of business is believed to be in this District and many of Defendants' acts complained of herein occurred within this District.

## IV.    FACTUAL ALLEGATIONS

### A.    The Data Breach and Defendants' Belated Notice

27.    BHI provides "support, including specialty services and staffing solutions , to the nuclear, fossil, hydro, wind, and solar generation power markets."[7]

28.    According to BHI, BHI "work[s] to support energy and power production, providing safe, high-quality engineering, construction and maintenance services that drive operational efficiency and support continuous improvement[.]"[8]

29.    Defendants have annual revenue of approximately $6.6 billion.[9] In other words, Defendants had more than enough revenue to implement adequate data security. Nevertheless, Defendants failed to spend sufficient resources on preventing external access, detecting outside infiltration, and training their employees to identify threats and defend against them.

---

[7] https://s3.documentcloud.org/documents/24075435/bhi-notice.pdf.

[8] https://www.bhienergy.com/our-services/.

[9] https://www.zoominfo.com/c/bhi-energy/347341466.

30. As part of their services, BHI was entrusted with, and obligated to safeguard and protect the Private Information of Plaintiffs and the Class in accordance with all applicable laws.

31. Plaintiffs and Class members were required to provide their Private Information to Defendants with the reasonable expectation and mutual understanding that BHI would comply with its obligations to keep such information confidential and secure from unauthorized access.

32. Accordingly, Defendants had obligations created by the FTC Act, HIPAA, reasonable industry standards, common law, statutory law, and its own assurances and representations to keep Plaintiffs and Class members' Private Information confidential and to protect such Private Information from unauthorized access.

33. "On June 29, 2023, BHI's information technology team initially identified evidence that data within its network had been encrypted."[10]

34. BHI claims that after discovering the incident it took steps to "isolate the involved systems to stop propagation of the incident, while ensuring that it could continue its business operations with only minor disruption as it responded to, investigated, and recovered from the incident."[11]

---

[10] https://s3.documentcloud.org/documents/24075435/bhi-notice.pdf.

[11] *Id.*

CLASS ACTION COMPLAINT

35.    The cybersecurity firm BHI engaged after the Data Breach determined that the threat actor who perpetrated the Breach was ransomware group, Akira.[12]

36.    Akira is a financially motivated ransomware group, known for its double extortion tactics, stealing victims' critical data prior to encrypting devices and files.[13] After stealing sensitive data, Akira demands a ransom to either decrypt the corrupted files or delete the data from Akira's systems.[14] Akira will leak the data onto the dark web if the ransom demand is not timely paid.[15] According to reports, ransom demands range anywhere from $200,000.00 to over $4,000,000.00.[16]

37.    Akira gained access to BHI's network on May 30, 2023, nearly one full month before BHI even discovered the Breach.[17]

38.    Akira's "initial access was achieved by using a previously compromised user account of a third-party contractor. Using that third-party contractor's account, [] [Akira] reached the internal BHI network through a VPN connection."[18]

---

[12] *Id.*

[13] *See* https://www.trendmicro.com/vinfo/us/security/news/ransomware-spotlight/ransomware-spotlight-akira.

[14] *Id.*

[15] *See* https://www.trendmicro.com/vinfo/us/security/news/ransomware-spotlight/ransomware-spotlight-akira; *see also* https://arcticwolf.com/resources/blog/conti-and-akira-chained-together/.

[16] *See* https://www.trendmicro.com/vinfo/us/security/news/ransomware-spotlight/ransomware-spotlight-akira.

[17] https://s3.documentcloud.org/documents/24075435/bhi-notice.pdf.

[18] *Id.*

9

39.    "In the week following initial access, [] [Akira] used the same compromised account to perform reconnaissance of the internal network."[19]

40.    "On June 16, 2023, [] [Akira] returned to the network and performed further data reconnaissance, and on June 18, 2023, began staging data."[20]

41.    Akira "ultimately exfiltrated 690 gigabytes of data between June 20, 2023, and June 29, 2023, including a copy of BHI's Active Directory database."[21]

42.    "On June 29, 2023, having completed exfiltration of the data, [] [Akira] deployed the Akira ransomware to a subset of systems within BHI's network."[22]

43.    Akira "provided a file listing that referenced 767,035 files exfiltrated, totaling 690GB of uncompressed data."

44.    Akira "created and subsequently deleted these archives on a BHI server."[23]

45.    After learning of the Data Breach, "BHI brought in an outside forensic consultant operating under the guidance of outside legal counsel, and began taking actions to remove the TA from the network and to recover involved systems."[24]

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

CLASS ACTION COMPLAINT

46.     According to BHI, "[b]ecause the company's cloud backup solution was not affected, BHI was able to successfully recover data in the systems without needing to obtain a ransomware decryption tool from [] Akira."[25]

47.     "After removing [] [Akira] from BHI's network, which occurred on or about July 7, 2023, BHI extended its deployment of EDR and antivirus software within the environment; performed an Enterprise Password Reset; decommissioned legacy and unused systems; and implemented multi-factor authentication on its remote access VPN."[26]

48.     In sum, cybercriminals infiltrated Defendants' inadequately protected computer networks, stole 690 GB of data containing the Private Information of Plaintiffs' and the Class, and Defendants did not pay the ransom demand, and did nothing to retrieve the stolen data.

49.     Given Akira's known track record of leaking data on the dark web,[27] it is only a matter of time before Plaintiffs'' and the Class's Private Information is leaked on the dark web, that is, if it has not been leaked on the dark web already.

50.     The stolen Private Information at issue has great value to the hackers, due to the large number of individuals affected and the fact that medical information and Social Security numbers were part of the data that was compromised.

---

[25] *Id.*

[26] *Id.*

[27] https://arcticwolf.com/resources/blog/conti-and-akira-chained-together/.

CLASS ACTION COMPLAINT

51.     Plaintiffs and the Class will be at an imminent risk of fraud and identity theft for the rest of their lives.

### B.    Plaintiffs' Experiences

*Plaintiff Kim. R. Wever*

52.     Plaintiff Wever entrusted her Private Information, directly or indirectly, to BHI to receive utility services with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access. Nonetheless, Plaintiff Wever received a Notice Letter from Defendants dated October 18, 2023, informing her that BHI failed to adequately protect her PII and PHI and that her Private Information was identified as having been compromised in the Data Breach.

53.     Because of the Data Breach, Plaintiff Wever's Private Information is now in the hands of cyber criminals who will leak and market her Private Information on the dark web (if they have not done so already) and will misuse her data for years to come.

54.     As evidenced by the fact that BHI admits Akira ransomware group stole Plaintiff's and the Class's PII and PHI, Plaintiff and the Class are imminently at risk of crippling future identity theft and fraud.

55.     As a result of the Data Breach, Plaintiff Wever has already expended hours of her time and has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including researching and verifying the legitimacy of the Data Breach, researching credit monitoring

and identity theft protection services, and reviewing credit reports for unusual activity, which may take years to detect.

56.    Plaintiff Wever has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff's valuable Private Information; (b) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff's Private Information being placed in the hands of cyber criminals; (c) damages to and diminution in value of Plaintiff's Private Information that was entrusted to Defendants for the sole purpose of obtaining employment with the understanding that Defendants would safeguard this information against disclosure; (d) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—i.e., the difference in value between what Plaintiff should have received from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's Private Information; and (e) continued risk to Plaintiff's Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

57.    Plaintiff Wever also suffered actual injury in the form experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach.

CLASS ACTION COMPLAINT

58.    The Data Breach has caused Plaintiff Wever to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

59.    As a result of the Data Breach, Plaintiff Wever anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Wever is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

60.    Plaintiff Wever has a continuing interest in ensuring that her PII, which, upon information and belief, remain backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Tom Melton

61.    Plaintiff Melton was a BHI employee from approximately 2004 to 2017.

62.    Plaintiff Melton entrusted his Private Information to BHI as a condition of his employment at BHI with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

63.    Nonetheless, Plaintiff Melton received a Notice Letter from Defendants dated October 18, 2023, informing him that BHI failed to adequately protect his PII and PHI and that his Private Information was identified as having been compromised in the Data Breach.

CLASS ACTION COMPLAINT

64.    As evidenced by the fact that BHI admits Akira ransomware group stole Plaintiff's and the Class's PII and PHI, Plaintiff and the Class are imminently at risk of crippling future identity theft and fraud.

65.    As a result of the Data Breach, Plaintiff has already expended hours of his time and has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including contacting credit bureaus to place freezes on his accounts, signing up for the credit monitoring and identity theft protection services offered by Defendant, and reviewing credit reports and financial accounts for unusual activity, which may take years to detect.

66.    Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (i) invasion of privacy; (ii) theft of his Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; and (vii)  the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

CLASS ACTION COMPLAINT

67.     Plaintiff further suffered actual injury in the form his Private Information being disseminated on the dark web, according to Experian IdentityWorks, was caused by the Data Breach.

68.     Plaintiff also suffered actual injury in the form experiencing an increase in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach.

69.     The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed him of key details about the Data Breach's occurrence.

70.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

71.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remain backed up in Defendant's possession, is protected and safeguarded from future breaches.

C.     **Defendants had an Obligation to Protect Private Information Under the Law and the Applicable Standard of Care.**

72.     Upon information and belief, Defendants are covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for

CLASS ACTION COMPLAINT

the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

73.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information, including health information that is kept or transferred in electronic form.

74.    HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

75.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

76.    HIPAA's Security Rule requires Defendants to do the following:

a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.    Ensure compliance by their workforce.

CLASS ACTION COMPLAINT

77.    HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

78.    Additionally, HIPAA requires Defendants to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

79.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

80.    Defendants were also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."

81.    The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive Private Information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

82.    Defendants are further required by various states' laws and regulations to protect Plaintiffs' and Class members' Private Information.

83.    Defendants owed a duty to Plaintiffs and the Class to design, maintain, and test its computer and email systems to ensure that the Private Information in its possession was adequately secured and protected.

84.    Defendants owed a duty to Plaintiffs and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees (and others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

85.    Defendants owed a duty to Plaintiffs and the Class to implement processes that would detect a breach on its data security systems in a timely manner.

86.    Defendants owed a duty to Plaintiffs and the Class to act upon data security warnings and alerts in a timely fashion.

87.    Defendants owed a duty to Plaintiffs and the Class to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

88.    Defendants owed a duty to Plaintiffs and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust Private Information with Defendants.

89.    Defendants owed a duty to Plaintiffs and the Class to disclose in a timely and accurate manner when data breaches occurred.

CLASS ACTION COMPLAINT

90.    Defendants owed a duty of care to Plaintiffs and the Class because they were foreseeable and probable victims of any inadequate data security practices.

**D.    Defendants were on Notice of Cyber Attack Threats and of the Inadequacy of their Data Security.**

91.    Defendants were on notice of the threat of cyberattacks and the harm that inadequate data security would inflict upon Plaintiffs and the Class.[28]

92.    Indeed, "[t]he ransomware attack on Colonial Pipeline in 2021 that halted operations on a pipeline moving 2.5 million barrels per day of gasoline, diesel, and jet fuel from Houston to the East Coast also started with use by attackers of a VPN account that had been set up with no MFA. i.e. One user name/password combination was all it took to start the attack."[29]

93.    "As the Department of Defense has put it bluntly: 'VPNs pose a threat to enterprise security. They create a path in the network perimeter and provide access to network resources after authentication. The conventional approach cannot provide a method to intelligently confirm the identities of users and entities attempting to access the network or provide adaptive policy enforcement based on authentication.'"[30]

---

[28] https://www.thestack.technology/bhi-energy-ransomware/ (noting a similar data breach in the energy sector in which the threat actor accessed Colonial Pipeline's systems).

[29] https://www.thestack.technology/bhi-energy-ransomware/.

[30] *Id.*

20

94.     Defendants were also on notice of the importance of data encryption of Private Information. Defendants knew they kept Private Information in their systems but failed to encrypt the data they stored.

95.     Defendant also failed to implement simple multi-factor authentication, a rudimentary standard of practice, prior to the Data Breach, giving Akira easy access to its systems.

### E.     Cyber Criminals Will Use Plaintiffs' and Class Members' Private Information to Defraud Them.

96.     Plaintiffs' and Class members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiffs and the Class members and to profit off their misfortune.

97.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[31] For example, with the Private Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other

---

[31]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

CLASS ACTION COMPLAINT

harmful forms of identity theft.[32] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and Class members.

98.    Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[33]

99.    For example, it is believed that certain Private Information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma.[34]

100.    This was a financially motivated Data Breach, as apparent from Akira's previous attempts to seek to profit off the sale of PII and PHI on the dark web. The Private Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein.

---

[32]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[33] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; HoMelton, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu.

[34] *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

CLASS ACTION COMPLAINT

101.    These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[35]

102.    Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[36]

103.    Medical-related identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013…," which is more than identity thefts involving banking and finance, the government and the military, or education.[37]

104.    As indicated by James Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial

---

[35]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[36] *See Cases Currently Under Investigation,* U.S. DEP'T OF HEALTH & HUMAN SERVS.: BREACH PORTAL, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.

[37] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

information all in one place."[38] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[39]

105.    If cyber criminals manage to steal financial information, health information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendants has exposed the Plaintiffs and Class members.

106.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[40]

107.    With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

108.    Victims of the Data Breach, like Plaintiffs and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[41]

---

[38] IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[39] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

[40] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[41] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

CLASS ACTION COMPLAINT

109.    In fact, as a direct and proximate result of the Data Breach, Plaintiffs and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft.  Plaintiffs and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including signing up for identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

110.    Plaintiffs and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a.    Trespass, damage to, and theft of their personal property including Private Information;

    b.    Improper disclosure of their Private Information;

    c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and having been already misused;

    d.    The imminent and certainly impending risk of having their Private Information used against them by spam callers to defraud them;

    e.    Damages flowing from Defendants' untimely and inadequate notification of the data breach;

CLASS ACTION COMPLAINT

f.    Loss of privacy suffered as a result of the Data Breach;

g.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.    Ascertainable losses in the form of deprivation of the value of patients' Private Information for which there is a well-established and quantifiable national and international market;

i.    The loss of use of and access to their credit, accounts, and/or funds;

j.    Damage to their credit due to fraudulent use of their Private Information; and

k.    Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

111.    Moreover, Plaintiffs and Class members have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendants have shown themselves to be incapable of protecting Plaintiffs' and Class members' Private Information.

112.    Plaintiffs and Class members are desperately trying to mitigate the damage that Defendants have caused them but, given the Private Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiffs and all Class members will need to have identity

CLASS ACTION COMPLAINT

theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[42]

113.    None of this should have happened. The Data Breach was preventable.

**F.    Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiffs' and Class Members' Private Information**

114.    Data breaches are preventable.[43] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[44] he added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[45]

115.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate

---

[42]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

[43]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

[44]*Id.* at 17.

[45]*Id.* at 28.

CLASS ACTION COMPLAINT

information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[46]

116.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

117.    In 2016, the FTC updated its publication, *Protecting Private Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of Private Information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.7 The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[47]

118.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for

---

[46]*Id.*

[47] *Protecting Private Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

119.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

120.    These FTC enforcement actions include actions against healthcare providers and partners like Defendants. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

121.    Defendants failed to properly implement basic data security practices, including those set forth by the FTC.

122.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

123.    Defendants also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1,

PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

124.    Defendants required Plaintiffs and Class members to surrender their Private Information – including but not limited to their names, addresses, Social Security numbers, and medical information—and were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Private Information.

125.    Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendants' failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiffs' and Class members' Private Information.

126.    Defendants was at all times fully aware of its obligation to protect the Private Information of Plaintiffs and Class members. Defendants were also aware of the significant repercussions that would result from its failure to do so.

127.    Defendants maintained the Private Information in a reckless manner.

128.    Defendants knew, or reasonably should have known, of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiffs' and Class members' Private Information was stolen, including the significant costs that would be placed on Plaintiffs and Class members as a result of a breach.

129.    The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class members' Private Information was a known risk to Defendants, and

thus Defendants were on notice that failing to take necessary steps to secure Plaintiffs' and Class members' Private Information from those risks left that information in a dangerous condition.

130.    Defendants disregarded the rights of Plaintiffs and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiffs and Class members prompt and accurate notice of the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

131.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

132.    Plaintiffs bring all claims as class claims under Federal Rule of Civil Procedure 23.  Plaintiffs assert all claims on behalf of the Nationwide Class, defined as follows:

> **Nationwide Class**
> All persons residing in the United States whose Private Information was compromised as a result of the BHI Data Breach that was discovered in June 2023 (the "Class").

133.    Plaintiffs reserve the right to amend the above definitions or to propose alternative or add subclasses in subsequent pleadings and motions for class certification.

134.    The proposed Nationwide Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

135.    **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. According to the breach report submitted to the Office of the Maine Attorney General, at least 91,000 persons were impacted in the Data Breach.[48]

136.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiffs' claims are identical to those that give rise to the claims of every other Class member because Plaintiffs and each member of the Class had their sensitive Private Information compromised in the same way by the same conduct of Defendants.

137.    **Adequacy:** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class and proposed Subclass that they seek to represent; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and his counsel.

---

[48]    *See*    https://apps.web.maine.gov/online/aeviewer/ME/40/0c96d450-be94-40b9-92ad-6c8e1cf64ef8.shtml

CLASS ACTION COMPLAINT

138.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

139.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

    a.    Whether Defendants engaged in the wrongful conduct alleged herein;

    b.    Whether Defendants failed to adequately safeguard Plaintiffs' and the Class's Private Information;

    c.    Whether Defendants' computer systems and data security practices used to protect Plaintiffs' and Class members' Private Information

violated the FTC Act, HIPAA, and/or state laws and/or Defendants' other duties discussed herein;

d.     Whether Defendants owed a duty to Plaintiffs and the Class to adequately protect their Private Information, and whether it breached this duty;

e.     Whether Defendants knew or should have known that their computer and network security systems were vulnerable to a data breach;

f.     Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g.     Whether Defendants breached contractual duties owed to Plaintiffs and the Class to use reasonable care in protecting their Private Information;

h.     Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

i.     Whether Defendants continue to breach duties to Plaintiffs and the Class;

j.     Whether Plaintiffs and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

CLASS ACTION COMPLAINT

k.     Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief;

l.     Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiffs and members of the Class and the general public;

m.     Whether Defendants' actions alleged herein constitute gross negligence; and

n.     Whether Plaintiffs and Class members are entitled to punitive damages.

## VI.     CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE
**(On Behalf of Plaintiffs and the Nationwide Class)**

140.     Plaintiffs incorporate by reference the allegations in the preceding as though fully set forth herein.

141.     Defendants solicited, gathered, and stored the Private Information of Plaintiffs and the Class as part of the operation of its business.

142.     Upon accepting and storing the Private Information of Plaintiffs and Class members, Defendants undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

35

143.    Defendants had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiffs and Class members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

144.    Plaintiffs and Class members were the foreseeable victims of any inadequate safety and security practices on the part of Defendants. Plaintiffs and the Class members had no ability to protect their Private Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiffs and the Class.

145.    Defendants was well aware of the fact that cyber criminals routinely target entities through cyberattacks in an attempt to steal sensitive Private Information.

146.    Defendants owed Plaintiffs and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining, storing, using, and managing Private Information, including taking action to reasonably safeguard such data and providing notification to Plaintiffs and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

147.    Defendants' duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures

36

also have recognized the existence of a specific duty to reasonably safeguard Private Information.

148.    Defendants had duties to protect and safeguard the Private Information of Plaintiffs and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendants owed Plaintiffs and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiffs' and Class members' Private Information in its possession by using reasonable and adequate security procedures and systems;

c.    To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks and servers; and

d.    To promptly notify Plaintiffs and Class members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

CLASS ACTION COMPLAINT

149.    Only Defendants were in a position to ensure that their systems and protocols were sufficient to protect the Private Information that Plaintiffs and the Class had entrusted to it.

150.    Defendants breached their duty of care by failing to adequately protect Plaintiffs' and Class members' Private Information. Defendants breached their duties by, among other things:

    a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Private Information in its possession;

    b.    Failing to protect the Private Information in its possession by using reasonable and adequate security procedures and systems;

    c.    Failing to adequately and properly audit, test, and train its employees to avoid phishing emails;

    d.    Failing to use adequate email security systems, including healthcare industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

    e.    Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

f.    Failing to adequately train its employees to not store Private Information in their email inboxes longer than absolutely necessary for the specific purpose that it was sent or received;

g.    Failing to consistently enforce security policies aimed at protecting Plaintiffs' and the Class's Private Information;

h.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i.    Failing to promptly notify Plaintiffs and Class members of the Data Breach that affected their Private Information.

151.    Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

152.    As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiffs and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

153.    Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Private Information of Plaintiffs and Class members from being stolen and misused, Defendants unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiffs and Class members while it was within Defendants' possession and control.

154.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class members, Defendants prevented Plaintiffs and Class

members from taking meaningful, proactive steps toward securing their Private Information and mitigating damages.

155.    As a result of the Data Breach, Plaintiffs and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies. This is in addition to the identity theft and fraud Plaintiffs alleged.

156.    Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

157.    The damages Plaintiffs and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

158.    In addition to its duties under common law, Defendants had additional duties imposed by statute and regulations, including the duties under HIPAA and the FTC Act. The harms which occurred as a result of Defendants' failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

159.    Defendants violated these statutes when it engaged in the actions and omissions alleged herein, and Plaintiffs' and Class members' injuries were a direct and

CLASS ACTION COMPLAINT

proximate result of Defendants' violations of these statutes. Plaintiffs therefore is entitled to the evidentiary presumptions for negligence *per se*.

160.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendants owed a duty to Plaintiffs and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and the Class.

161.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also formed part of the basis of Defendants' duty in this regard.

162.    Defendants gathered and stored the Private Information of Plaintiffs and the Class as part of its business of soliciting and facilitating its services to its patients, which affect commerce.

163.    Defendants violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

164.    Defendants breached its duties to Plaintiffs and the Class under the FTC Act, and HIPAA by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiffs' and Class members' Private Information, and by failing to provide prompt and specific notice without reasonable delay.

CLASS ACTION COMPLAINT

165.    Plaintiffs and the Class are within the class of persons that HIPAA and the FTC Act were intended to protect.

166.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

167.    Defendants breached its duties to Plaintiffs and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Private Information.

168.    Additionally, Defendants had a duty to promptly notify victims of the Data Breach. Defendants did not begin notifying Plaintiffs or Class members of the Data Breach until June 2022.  Defendants, however, knew of the Data Breach by April 25, 2022.

169.    Defendants breached its duties to Plaintiffs and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiffs and the Class.

170.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered, and continue to suffer, damages arising from the Data Breach, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; (viii) Plaintiff Melton's Private Information being disseminated on the

dark web, according to IdentityWorks; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

171.    The injury and harm that Plaintiffs and Class members suffered (as alleged above) was the direct and proximate result of Defendants' negligence.

172.    Plaintiffs and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## COUNT TWO
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Nationwide Class)

173.    Plaintiffs incorporate by reference the allegations in the preceding as though fully set forth herein.

174.    Plaintiffs and the Class bring this claim in the alternative to all other claims and remedies at law.

175.    Defendant received monetary benefits from Plaintiffs and the Class because Plaintiffs' labor allowed Defendant to obtain profits and revenue.

176.    Defendants collected, maintained, and stored the Private Information of Plaintiffs and Class members and, as such, Defendants had direct knowledge of the monetary benefits conferred upon it by Plaintiffs' and Class members.

177.    Defendants, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with Plaintiffs and the Class members, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on reasonable data privacy and security measures to secure Plaintiffs' and Class members' Private Information.

178.    Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Private Information, Defendants, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiffs and Class members.

179.    As a direct and proximate result of Defendants' decision to profit rather than provide adequate data security, Plaintiffs and the Class have suffered, and continue to suffer, damages arising from the Data Breach, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) experiencing an increase in spam calls, texts, and/or emails; and (viii) Plaintiff Melton's Private Information being disseminated on the dark web, according to IdentityWorks; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties

44

to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

180.    Defendants, upon information and belief, have therefore engaged in opportunistic, unethical, and immoral conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiffs and the Class in direct violation of Plaintiffs' and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits it derived as a consequence of its wrongful conduct.

181.    Accordingly, Plaintiffs and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiffs and the Class.

**<u>COUNT THREE</u>**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Nationwide Class)**

182.    Plaintiffs incorporate by reference the allegations in the preceding as though fully set forth herein.

183.    When Plaintiffs and the Class members provided their Private Information to Defendants, they entered into implied contracts in which Defendants agreed to comply with its statutory and common law duties to protect Plaintiffs' and Class members' Private Information and to timely notify them in the event of a data breach.

45

184.    Defendants required Plaintiffs and Class members to provide their Private Information in order for them to receive employment.

185.    Based on the implicit understanding, Plaintiffs and the Class accepted Defendants' offers and provided Defendants with their Private Information.

186.    Plaintiffs and Class members would not have provided their Private Information to Defendants had they known that Defendants would not safeguard their Private Information, as promised, or provide timely notice of a data breach.

187.    Plaintiffs and Class members fully performed their obligations under their implied contracts with Defendants.

188.    Defendants breached the implied contracts by failing to safeguard Plaintiffs' and Class members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

189.    The losses and damages Plaintiffs and Class members sustained (as described above) were the direct and proximate result of Defendants' breach of their implied contracts with Plaintiffs and Class members.

**COUNT FOUR**
**DECLARATORY RELIEF**
**(On Behalf of Plaintiffs and the Nationwide Class)**

190.    Plaintiffs incorporate by reference the allegations in the preceding as though fully set forth herein.

191.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

192.    As previously alleged, Plaintiffs and members of the Class entered into implied contracts with Defendants, which contracts required Defendants to provide adequate security for the PII/PHI collected from Plaintiffs and the Class.

193.    Defendants owed and still owe a duty of care to Plaintiffs and Class members that require them to adequately secure Plaintiffs' and Class members' PII/PHI.

194.    Upon reason and belief, Defendants still possess the PII/PHI of Plaintiffs and the Class members.

195.    Defendants have not satisfied their contractual obligations and legal duties to Plaintiffs and the Class members.

196.    Since the Data Breach, Defendants have not yet announced any changes to their data security infrastructure, processes, or procedures to fix the vulnerabilities in their computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

197.    Defendants have not satisfied their contractual obligations and legal duties to Plaintiffs and the Class. In fact, now that Defendants' insufficient data security is known to hackers, the PII/PHI in Defendants' possession is even more vulnerable to cyberattack.

198.    Actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiffs and the members of the Class. Further, Plaintiffs and the members of the Class are at risk of additional or further harm due to the exposure of their PII/PHI and Defendants' failure to address the security failings that led to such exposure.

199.    There is no reason to believe that Defendants' security measures are any more adequate now than they were before the Data Breach to meet Defendants' contractual obligations and legal duties.

200.    Plaintiffs and the Class, therefore, seek a declaration (1) that Defendants' existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

a.    Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b.    Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c.    Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

d.    Ordering that Defendants segment employee data by, among other things, creating firewalls and access controls so that if one area of defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

CLASS ACTION COMPLAINT

e. Ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for their provisions of services;

f. Ordering that Defendants conduct regular database scanning and security checks; and

g. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## VII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendants as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b. A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

CLASS ACTION COMPLAINT

i.    Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii.   Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

iii.  Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

iv.   Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.    Ordering that Defendants cease transmitting Private Information via unencrypted email;

vi.   Ordering that Defendants cease storing Private Information in email accounts;

50

    vii.    Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

    viii.    Ordering that Defendants conduct regular database scanning and securing checks;

    ix.    Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

    x.    Ordering Defendants to meaningfully educate its current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and Private Information to third parties, as well as the steps they must take to protect against such occurrences;

d.    An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

CLASS ACTION COMPLAINT

f.    An award of such other and further relief as this Court may deem just

and proper.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  October 31, 2023

/s/    *Randi Kassan*
Randi Kassan (MA Bar No. 568656)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLC**
100 Garden City Plaza
Garden City, NY 11530
Telephone: (212) 594-5300
rkassan@milberg.com

David K. Lietz*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

***Counsel for Plaintiffs and the Proposed Class***

**Pro Hac Vice* application forthcoming

CLASS ACTION COMPLAINT